STATE of Maine

v.

George PALMER.

Supreme Judicial Court of Maine.

Argued Nov. 22, 1983.

Decided Dec. 13, 1983.

---

David W. Crook, Dist. Atty., Alan P. Kelley, Deputy Dist. Atty. (orally), Augusta, for plaintiff.

Goodspeed & O'Donnell, Joseph M. O'Donnell (orally), Hallowell, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, GLASSMAN and SCOLNIK, JJ.

GLASSMAN, Justice.

On November 12, 1981, a Kennebec County grand jury indicted the defendant, George Palmer, charging him with five counts of theft by unauthorized taking, 17–A M.R.S.A. § 353 (Pamph.1981), and two counts of receiving stolen goods, 17–A M.R.S.A. § 359 (Pamph.1981). On April 22, 1982, the defendant entered a guilty plea on four of the seven counts. In return, counts three and six (receiving stolen goods) were reduced to Class D crimes, and three of the five counts of theft were dismissed. The Superior Court, Kennebec County, entered a judgment on the guilty pleas on May 18, 1982. The court sentenced the defendant to six months in jail on each Class D receiving stolen goods count, to be served concurrently, and to a consecutive two years at the Maine Correctional Center on each of the Class C theft counts, also to run concurrently. The sentencing justice suspended the two-year imprisonment term, placing the defendant on probation for that two-year period, on the condition that the defendant make restitution payments to the victims in the amount of $3564.

On May 19, 1982, the defendant filed a motion to correct the sentence pursuant to M.R.Crim.P. 35 (1983), contending that the sentence was violative of 17–A M.R.S.A. § 1256[1] and § 1203(2).[2] A hearing on the motion was held on June 11, 1982, at which the sentencing justice articulated his reasons for the sentence. The justice stated that he had contemplated sentencing the

1. 17–A M.R.S.A. § 1256(2) states that sentences should be concurrent, unless in considering the following factors, the court decides to impose sentences consecutively:

A. That the convictions are for offenses based on different conduct or arising from different criminal episodes;

B. That the defendant was under a previously imposed suspended or unsuspended sentence and was on probation, under incarceration or on a release program at the time he committed a subsequent offense;

C. That the defendant had been released on bail when he committed a subsequent offense, either pending trial of a previously committed offense or pending the appeal of previous conviction; or

D. That the seriousness of the criminal conduct involved in either a single criminal episode or in multiple criminal episodes or the seriousness of the criminal record of the convicted person, or both, require a sentence of imprisonment in excess of the maximum available for the most serious offense.

2. At the time of sentencing, 17–A M.R.S.A. § 1203(2) provided that when a court imposes a split sentence, the initial unsuspended portion shall not exceed 120 days. The unsuspended portion of Palmer's sentence was six months. The legislature recently eliminated the 120-day limitation on the unsuspended portion of a split sentence. P.L.1983, ch. 268, § 1 (effective Sept. 22, 1983).

defendant, a man with several prior convictions, to one or two years of incarceration without probation. The court explained that it wished to impose a realistic punishment, while at the same time provide the defendant with an opportunity to make restitution, and that both of these considerations were served by the split sentence.[3]

The defendant then filed a petition for post-conviction review of the sentence pursuant to 15 M.R.S.A. §§ 2121–2132 (Supp. 1982–83). In an order entered on April 29, 1983, the reviewing justice held the sentences imposed on the Class C offenses illegal. The court reasoned that pursuant to 17–A M.R.S.A. § 1256(2), a court may impose consecutive sentences only in a limited number of instances, none of which was applicable in the case before him. Accordingly, the reviewing justice vacated the two-year suspended sentences and restitution order imposed for the two Class C offenses, and remanded the matter to the Superior Court for new sentencing on the theft charges.

On May 31, 1983, the defendant appeared before the Superior Court for new sentencing on the Class C charges. The defendant was sentenced to two years actual imprisonment[4] and was again ordered to pay restitution in the amount of $3564.[5] The resentencing justice explained he was imposing a more severe sentence than imposed originally not as retaliation for the defendant's exercise of the right to appeal, but because he had earlier suspended the defendant's sentence only to help insure restitution.

The court noted that there was no identifiable conduct on the part of the defendant subsequent to the original sentencing which merited the increased punishment.

█ The defendant appeals, contending, *inter alia*, that the imposition of two years actual imprisonment upon resentencing violated due process, when all but six months of the defendant's sentences previously had been suspended. We agree.

█ Generally, pursuant to 15 M.R.S.A. § 2141 (1980), the Appellate Division of the Supreme Judicial Court is the appropriate body for review of sentences of one year or more. Where, however, a criminal defendant seeks review of the "legality" rather than the "propriety" of a sentence, the Law Court may entertain a direct appeal. *State v. Allison,* 427 A.2d 471, 475 (Me.1981); *State v. Carver,* 330 A.2d 785, 786 (Me.1975); 3 Glassman, *Maine Practice: Rules of Criminal Procedure Annotated* § 40.1 at 347 (1967).[6] Because the defendant challenges his sentence on constitutional grounds, the issue before us is one of legality and is cognizable on direct appeal.

In *North Carolina v. Pearce,* 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court considered whether the Constitution permits the imposition of a harsher sentence after conviction upon retrial than was initially imposed, when the original criminal conviction was set aside at the defendant's behest and a new trial ordered. *Id.* at 713, 89 S.Ct. at 2074. Declaring that due process of law

---

3. The justice observed that if it was later determined he lacked authority to impose the split sentence, he

> would have to consider imposing more time because that is frankly something I considered very seriously anyway. If I can't do what I did, I will just have to bite the bullet, impose restitution and impose a longer sentence for a longer time without a split sentence.

4. The resentencing justice failed to specify whether the two-year term for the Class C offenses and the six-month sentence for the Class D offenses were to be served concurrently or consecutively. Because the post-convic-

tion review order permitted only the former, we assume that the resentencing justice intended that the sentences run concurrently.

5. The court imposed restitution without first inquiring into the defendant's ability to make restitution payments as required by 17–A M.R.S.A. §§ 1325 and 1326. *State v. Stinson,* 424 A.2d 327, 334 (Me.1981); *State v. Blanchard,* 409 A.2d 229, 238 (Me.1979).

6. Additionally, the alleged infirmity, even if one of law, must appear affirmatively from the record. *State v. Blanchard,* 409 A.2d 229, 233 (Me.1979); *State v. Parker,* 372 A.2d 570, 572 (Me.1977).

requires that vindictiveness against a defendant for having successfully attacked an initial conviction play no role in the sentence imposed after conviction upon retrial, and that a defendant be free of fear of such judicial retaliation, the Court prescribed a prophylactic rule to help ensure the absence of vindictiveness. *Id.* at 724–25, 89 S.Ct. at 2080. The Court observed:

> In order to assure the absence of such a motivation, we have concluded that whenever a judge imposes a more severe sentence upon a defendant after a new trial, the reasons for his doing so must affirmatively appear. Those reasons must be based upon objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. And the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal.

*Id.* at 726, 89 S.Ct. at 2081.

■ Subsequent to *Pearce,* the Supreme Court has emphasized that the danger the *Pearce* Court sought to minimize was retaliation for a defendant's exercise of the right to an appeal. *E.g., Bordenkircher v. Hayes,* 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978). Therefore, due process is not offended by all possibilities of increased punishment after retrial, but only by those which pose a realistic likelihood of vindictiveness. *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974).

In *Weeks v. State,* 267 A.2d 641 (Me. 1970), we adopted *Pearce* as a matter of state constitutional law.[7] *Id.* at 647. Re-

stating the rule enunciated in *Pearce,* we observed that: (1) vindictiveness must play no role in a sentence received after retrial; (2) to assure the absence of retaliatory motivation, the reasons underlying the imposition of the more severe sentence must affirmatively appear from the record; and (3) the reasons supporting the harsher sentence must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the original sentencing proceeding. *Id.* at 646.

Initially, it should be noted that the case at bar is factually distinguishable from *Pearce* and *Weeks.* Whereas the defendants in *Pearce* and *Weeks* contested the validity of the original convictions themselves, Palmer challenged the legality only of the initial sentence. This distinction, however, is not constitutionally significant. Vindictive motivation in resentencing poses a realistic threat in both situations. In both, the defendant has challenged an initial ruling, the challenge has been upheld, and the matter has been remanded to the court of original jurisdiction to consider it anew.

Although, in the instant case, the resentencing justice expressed his reasons on the record for imposing the harsher sentence, the reasons were not based on objective information concerning identifiable conduct on the part of the defendant occurring after the original sentencing proceeding.[8] In fact, the resentencing justice, in response to a defense counsel query, stated the increase in punishment was unrelated to Palmer's conduct after the initial sentence was imposed. Therefore, the third prong of the *Pearce* rule, as interpreted by *Weeks,* was not satisfied.[9] *See Weeks,* 467 A.2d at 646.

---

**7.** *See* Me. Const. art. 1, § 6–A (no person shall be "deprived of life, liberty, or property without due process of law . . . .").

**8.** Part of the reason the Supreme Court adopted a prophylactic rule in *Pearce* was because of the extreme difficulty of proving retaliatory motive in a particular case. *See Pearce,* 395 U.S. at 725 n. 20, 89 S.Ct. at 2080–81 n. 20.

**9.** The appellee's reliance on *State v. Smith,* 437 A.2d 639 (Me.1981), and *State v. Keegan,* 296 A.2d 483 (Me.1972), as supportive of the argument that the increased sentence should be affirmed despite the failure to comply with the third prong of the *Pearce-Weeks* test is misplaced. *Smith* simply reaffirmed *Keegan,* which held that the imposition of more severe punishment when a defendant exercises his right to a trial *de novo* after conviction by a

Because the increase in punishment was not related to identifiable conduct on the part of the defendant occurring after the original sentencing proceeding, the two-year imprisonment term and restitution order was violative of due process and cannot be upheld. Therefore, we vacate the sentence on the Class C charges and limit the defendant's sentence to the six months already served for the Class D offenses.

The entry is:

Vacate two-year sentence and restitution order imposed on Class C charges and direct entry of sentence of six months on Class C charges to run concurrently with six-month sentence on Class D charges.

All concurring.

judge of the District Court does not violate due process. *Keegan,* 296 A.2d at 485–86. The two-tier trial system is entirely different from the situations presented in *Pearce* and *Weeks,* and here. At the time of *Keegan* and *Smith,* a defendant found guilty in the District Court had a right to appeal and get a trial *de novo.* When the case came before the Superior Court, the entire slate was wiped clean as if brought there initially. An entirely different court heard the case anew. Therefore, the two-tier trial system as it previously existed presented no likelihood of vindictiveness.