**Bruce C. WEEKS**

v.

**STATE of Maine et al.**

Supreme Judicial Court of Maine.

July 16, 1970.

Donald A. Fowler, Jr., Portland, for plaintiff.

John W. Benoit, Jr., Deputy Atty. Gen., Augusta, for defendants.

Before WILLIAMSON, C. J., and WEBBER, MARDEN, DUFRESNE and WEATHERBEE, JJ.

DUFRESNE, Justice.

Charged with felonious assault, the appellee, Bruce C. Weeks, entered a plea of guilty and was sentenced to a term in Maine State Prison of not less than two years and not more than four years. He was committed on September 23, 1966, but, due to the fact that the felonious assault conviction was for an offense while on parole, Weeks did not start serving his assault sentence until June 22, 1967. By inadvertence, however, the judgment of the Superior Court and the order of commitment in the felonious assault case erroneously recited that the defendant Weeks was convicted "of Assault and Battery of a high and aggravated nature as charged by Indictment."

In post-conviction habeas corpus proceedings brought by the appellee, this Court in appellate review granted relief and set aside the recorded judgment and sentence, remanded the case to the Superior Court for correction of the judgment to one of guilt of felonious assault and for resentence. Weeks v. State, March 7, 1969, Me., 250 A.2d 827. On March 17, 1969 the judgment was corrected in compliance with the remand order and the appellee Weeks was resentenced to a term of not less than one year and not more than two years in Maine State Prison to which institution he was then committed in execution of sentence.

Again Weeks sought relief from this new sentence in habeas corpus proceedings under 14 M.R.S.A., §§ 5502–5508, contending that his imprisonment was illegal and his sentence in violation of the Constitutions of the United States and of this State. Specifically, he claims 1) his resentencing constituted double jeopardy prohibited by

both Constitutions, 2) he was denied credit for time served on the erroneous sentence in violation of the Due Process and Equal Protection Clauses of the Fourteenth Amendment to the Constitution of the United States, 3) his service of the new sentence should date back to June 22, 1967, the date he started serving the erroneous sentence, and should not commence on March 17, 1969, the date of his last committal.

The single Justice in his memorandum of decision said in part:

"The sentence of not less than one year nor more than two years is the only sentence lawfully imposed and legally enforceable in this case. Since the sentencing magistrate was required by constitutionally protected considerations to subtract the time already served on the nullified sentence from whatever new sentence he imposed, (Ex parte Lange, 18 Wall. 163, 168, 21 L.Ed. 872), the petitioner had on March 17th already served the maximum time permitted by the valid sentence imposed, i. e., two years."

\* \* \* \* \* \*

"The conclusion must be, with earned "good time" he had completed the maximum two-year sentence prior to the time the Parole Board determined he was in violation of parole on March 7, 1969. It follows the Parole Board was without jurisdiction to extend the parole eligibility date to December 5, 1969."

The single Justice ordered the writ of habeas corpus to issue and the appellee to be enlarged from his imprisonment, from which action the State and the Warden of the Maine State Prison have appealed. The appeal must be sustained.

The record indicates that, when resentenced on March 17, 1969, Weeks had served on the erroneous sentence, whether in prison or on parole, and had earned as deduction for good conduct in relation thereto, the following time amounts:

Time served in prison from June 22, 1967 to December 11, 1968 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17 months      19 days
Good time earned in prison from June 22, 1967 to December 11, 1968 . . . . . . . . . . . . . . . . . . . . . . . . . 4 months       6 days
Credit for time served on parole from December 11, 1968 to February 27, 1969 . . . . . . . . . . . . . . . . . . 2 months      17 days
Time served in prison from February 27, 1969 to March 17, 1969, (date of resentence) . . . . . . . . . . . .                      19 days
Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23 months      61 days

Aggregate time credit to which Weeks was entitled on resentence, if legally so, . . . . . . . . . . . . . . . . . . . . . .·. . . . . . . . . 2 years, 1 month, 1 day.

---

We hasten to notice that the resentencing Justice did not have the benefit of North Carolina v. Pearce, decided by the United States Supreme Court on June 23, 1969, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. That decision has resolved all the constitutional issues of the instant case. Pearce was convicted in a North Carolina court of assault with intent to rape and sentenced to serve 12 to 15 years in prison. After having served several years, he was granted a new trial and his original sentence was set aside. After retrial and reconviction, Pearce was resentenced to a term of 8 years. The sentencing Court however expressly stated that it was its intention to give the defendant a sentence of 15 years in the State Prison, but that it was taking into consideration in passing sentence that the defendant had already served, with gain

time allowances, an aggregate of 6 years, 6 months and 17 days. Even so, it was agreed that the eight-year prison term, when added to the time Pearce had already spent in prison, when viewed in terms of sentence expiration dates, amounted to a longer total sentence than that originally imposed. In the instant case, the two-year maximum term which Weeks was given in resentence, when added to the time he had already served in prison and gained as good time deduction could possibly exceed by one month approximately the maximum term originally imposed. To that extent the second sentence was harsher than the first sentence. In the second case decided in Pearce, the defendant Rice was originally sentenced in an Alabama court to serve a total of 10 years on four charges of burglary. Upon retrial and reconviction, Rice's sentence was increased to 25 years and no credit was given for time previously served. In the instant case, Weeks claims that the Justice below failed to give him credit for the time he had served on the original sentence, even though the term on resentence was reduced from the original of 2 to 4 years to one of 1 to 2 years. The appellants, on the other hand, assert that the sentencing Court did in fact give Weeks credit for the time served and earned under the erroneous sentence; they claim such is a necessary factual inference from the express shorter term imposed.

These constitutional issues, in the setting in which they arose, are of first impression in this jurisdiction. They may be stated in manner as follows:

1) On resentencing a defendant who has successfully obtained his discharge from sentence either on direct appeal or in habeas corpus proceedings, may the Court impose a harsher sentence than the one originally imposed?

2) On resentencing must the Court give credit for time already served under the original sentence?

■ Initially, let us point out that the resentencing of a prisoner duly convicted of crime, whose sentence at his behest has been set aside, is not in and of itself within the constitutional prohibition against double jeopardy. State v. Alexander, 1969, Me., 257 A.2d 778; see, 22 C.J.S. Criminal Law § 273, p. 706, § 267, p. 687; 21 Am.Jur.2d, Criminal Law, §§ 209, 210.

Prior to North Carolina v. Pearce, a numerical majority of the decisions from other jurisdictions supported the doctrine that upon reconviction and resentencing for the same crime the sentencing court could increase the sentence and in fact assess any sentence within statutory limits and the previous erroneous sentence was no limitation upon its authority. See, Annotation at 12 A.L.R.3d 978. Courts of appeal from various federal circuits took diversified positions: some allowed more severe sentencing without limitation, United States ex rel. Starner v. Russell, 1967, 3d Cir., 378 F.2d 808; others imposed an absolute prohibition on increased sentences, Patton v. State of North Carolina, 1967, 4th Cir., 381 F.2d 636; a third group prohibited heavier penalties unless events had occurred subsequent to the first sentence and come to the attention of the resentencing court, which events warranted an increased sentence. Marano v. United States, 1967, 1st Cir., 374 F.2d 583; United States v. Coke, 1968, 2d Cir., 404 F.2d 836.

■ The United States Supreme Court in Pearce has now set for all the courts of the land the constitutionally permissive minimum requirements, when and in what manner a harsher sentence may be imposed on resentence than was meted out originally. In the first place, when a sentence is set aside at the prisoner's request, the constitutional guarantee against double jeopardy does not in and of itself restrict the imposition of an otherwise unlawful single punishment for the same offense, even if the second sentence be more severe than the first sentence. It is only when punishment already exacted is not fully credited

in imposing sentence upon a new conviction for the same offense that the Double Jeopardy Clause of the Constitutions is violated; such is manifestly apparent when on resentence a prisoner is given the maximum penalty provided by law and no allowance is made for the time already served or gained under the erroneous previous sentence. The constitutional prohibition against double jeopardy is designed as much to prevent the criminal from being twice punished for the same offense as from being twice tried for it. The Double Jeopary Clause does guarantee against multiple punishments for the same offense and that guarantee necessarily and absolutely requires time already served, including time credits earned during service of the first prison sentence for good behavior, be fully credited in imposing sentence upon a new conviction for the same offense. To the extent that the Double Jeopardy Clause of the Fifth Amendment to the Constitution of the United States may be applicable to prevent multiple punishments for the same offense, it is obligatory upon the states through the Fourteenth Amendment, Benton v. Maryland, June 23, 1969, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707. Furthermore, our own Constitution, Article 1, Section 8, grants the same guarantee in practically identical language as provided by the Fifth Amendment and both constitutional provisions are coextensive in meaning.

In Pearce, the Court rejected the argument advanced in the instant case that the Equal Protection Clause of the Fourteenth Amendment absolutely precluded the imposition of a more severe sentence on resentence. The theory is that it is an impermissible constitutional discrimination for the State to increase sentences of only one class of prisoners, to wit, those who have successfully obtained relief against a first conviction, when there may be equally good reasons for increasing the sentences of those who have in no way upset their original conviction. In answer thereto, however, we may point out that, by reason of the Double Jeopardy Clause, the State cannot increase the sentences of prisoners who do not challenge them, after these have become final. As stated in United States v. Coke, supra: "It is not a denial of equal protection for the state to effectuate a proper policy—here of imposing what seems a just sentence in light of all the facts—on those on whom it constitutionally can, simply because there are others on whom it constitutionally cannot." For similar reasons, our own constitutional provision that no person be denied the equal protection of the laws, Article I, Section 6-A, would not be violated.

In Pearce, a majority of the Court ruled that the Due Process Clause of the Fourteenth Amendment permitted the imposition of a heavier punishment upon reconviction and resentence but only within specific restrictive limitations as follows: (1) due process of law requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial upon reconviction; (2) to assure the absence of any such motivation of vindictiveness, the reasons underlying the giving of a more severe sentence upon a defendant after a new trial and upon resentence must affirmatively appear of record, and (3) those reasons must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding. The Court said that "the factual data upon which the increased sentence is based must be made part of the record, so that the constitutional legitimacy of the increased sentence may be fully reviewed on appeal."

Although we are bound by this interpretation of the Due Process Clause of the Constitution of the United States applicable to this State through the Fourteenth Amendment, it would be permissible for this Court to set up an absolute bar against the passing of heavier sentences on reconviction and resentence of those who

on their initiative have had their original sentences set aside, if we were convinced that such a policy would better serve the public interest. In balancing the interests involved, we readily recognize that the public has no interest in foreclosing the correction of an illegal sentence or an erroneously conducted trial and that the sanction of a possible harsher sentence in the event of a successful reversal of a previous conviction and sentence upon a subsequent new trial and conviction stands to chill if not cool completely a defendant's desire to have the error corrected. On the other hand, we view it in the public interest to assess a sentence, whether after a first or second trial, upon the most complete and current information available at the time of sentencing, including in the case of resentence new factual data involving conduct of the defendant which arose since the first sentence. We appreciate the built-in protection of the inflexible rule which limits resentence to the maximum first sentence with credits for time served or gained thereunder as against the possible exercise of vindictiveness by the resentencing judge and the need of a reviewing court to make a subjective determination whether the new facts were in fact the sole motive for the more severe sentence.

The Tentative Draft of "Standards Relating to Post-Conviction Remedies" recommended by the Advisory Committee on Sentencing and Review of the American Bar Association Project on Minimum Standards for Criminal Justice contains the following proposed standards:

"6.3 (a) Where prosecution is initiated or resumed against an applicant who has successfully sought post-conviction relief and a conviction is obtained, or where a sentence has been set aside as the result of a successful application for post-conviction relief and the defendant is to be re-sentenced, the sentencing court should not be empowered to impose a more severe penalty than that originally imposed." (Tent.Draft 1967, at page 94).

Some courts have adopted the rule suggested above either on the ground of fundamental fairness based on procedural policies essential to the proper administration of criminal justice, or in the name of efficient judicial administration of the criminal law, or as a matter of judicial policy. See, State v. Wolf, 1966, 46 N.J. 301, 216 A.2d 586; State v. Turner, 1967, 247 Or. 301, 429 P.2d 565; State v. Holmes, 1968, 281 Minn. 294, 161 N.W.2d 650.

In Pearce, the United States Supreme Court has set constitutional guidelines within which a resentencing court may operate without violating the Double Jeopardy and Due Process Clauses. We believe that in the present atmosphere of recidivism, when accused persons awaiting trial and criminals at large pending appeal continue their criminal activities while the accusation against them or their original conviction has not been finally adjudicated, it is in the public interest that the resentencing court continue to exercise its traditional discretion and be permitted wide latitude in fixing sentences within permissible constitutional limits. We therefore adopt for the courts of this State the constitutional guidelines established by Pearce.

The resentencing Justice when addressing the prisoner did state that he would not seek to penalize him "because of an appeal." Thus the vindictiveness motivation should be completely dispelled. However, concerning the crediting of time served, the following pertinent colloquy took place:

"THE COURT: Now, as I have determined this sentence, you will be eligible for parole at just about the same time you would be eligible for parole if this matter had not come before the Court. I am not seeking to enlarge the punishment or sentence you to 2 to 4 years as you were sentenced originally.

THE DEFENDANT: The year and a half I have already done down there was nothing. Right?

THE COURT: The year and a half you have spent down there, as a matter of fact you would not be there now had you not been in violation of parole. At that time, while it was a voidable sentence, it was effective, and you were serving the sentence under the judgment of this Court. You have to abide by the orders of this Court and the Institution and parole rules and regulations, and, having violated them, you were subject to the penalties that go with it."

It is impossible from the record to ascertain with any degree of objective certainty whether the resentencing Justice did factually give credit to the appellee for the time served and the "good time" earned under the original erroneous sentence. The Court's response to the appellee's specific inquiry thereon deprives the record of that concrete determinant upon which an appellate court can fully rely to find that the constitutional requirements of credit for time served have been met. At best there is ambiguity. It is true that the single Justice in the habeas corpus proceedings did find that the sentencing Court did not consider that it was required to deduct the penalty already incurred under the erroneous sentence from whatever sentence it imposed. However, we are not bound by this finding of the single Justice as he heard no oral testimony, the case being submitted to him on the pleadings, an agreed statement of facts and a transcript of the hearing at resentencing. The "clearly erroneous" rule disappears when the Justice below makes his decision from the printed record. The appellate court is then in an equally good position to find the facts and must do so uninfluenced by any findings of the single Justice. Matthews v. R. T. Allen & Sons, Inc. et al., June 8, 1970, Me., 266 A.2d 240; Page v. Nissen, 1969, Me., 254 A.2d 592, 594.

Since it is uncertain whether the resentencing Justice gave credit to the appellee for the time served on the erroneous sentence, and since the new sentence, if served in full, added to the time previously served, would mean that Weeks was given a harsher sentence on resentence than the original one, without supporting objective information of record respecting factors occurring after the time of the original proceeding, if any, we must set aside the existing sentence and remand the case again for resentence.

If the appellee is to be fully credited for the time served on the erroneous sentence, together with the "good time" earned for good conduct under the statutory provisions, the resentencing court may give proper credit on resentencing by expressly providing at least in general terms that the time already served and earned is to be considered as time first served on the new sentence. It is proper for the sentencing court to state the over-all imprisonment term intended on resentence, with express direction to the prison authorities to credit the prisoner with time served and earned gain time, service of the over-all imprisonment term to be considered as if de facto begun at the time of the first commitment under the erroneous sentence. We do not mean to say that such is the exclusive way to indicate the crediting of past service on resentencing.

There was error and the entry will be

Appeal sustained. Order of the single Justice that the writ of habeas corpus issue and that the petitioner, Weeks, be enlarged from imprisonment is hereby set aside. Sentence is set aside. Case is remanded to the Superior Court for resentencing in a manner consistent with this opinion.

POMEROY, J., did not sit.