**STATE of Maine**

v.

**James E. VIOLETTE.**

Supreme Judicial Court of Maine.

Argued May 30, 1990.

Decided July 11, 1990.

Mary Tousignant, Dist. Atty., Anne Jordan (orally), Deputy Dist. Atty., Alfred, for plaintiff.

Thomas Van Houten (orally), Wood & Van Houten, Sanford, for defendant.

Susan Parcels, Portland, amicus curiae for Maine Civil Liberties Union.

Before McKUSICK, C.J., and ROBERTS, WATHEN, GLASSMAN, CLIFFORD and COLLINS, JJ.

McKUSICK, Chief Justice.

At issue in this case is whether a new sentence imposed following a successful appeal of a criminal conviction and reconviction after a new trial may, in the absence of any misconduct on the part of the defendant following his first sentencing, be more severe than the original sentence. In the specific circumstances of this case and consistently with our prior rulings in *State v. Weeks*, 267 A.2d 641 (Me.1970), *State v. Palmer*, 468 A.2d 985 (Me.1983), and *State v. Keefe*, 573 A.2d 20 (Me.1990), we answer that question in the negative.

In February 1988 defendant James E. Violette was tried and convicted by the District Court (Biddeford, *Crowley, J.*) of operating a motor vehicle while under the influence of intoxicating liquor. He was sentenced to sixty days in jail, all but thirty suspended, and nine months of probation. The court also suspended his driver's license for two years, ordered him to participate in the Department of Human Services' Multiple Offenders Program, and fined him $750. On appeal the Superior Court (York County, *Fritzche, J.*) vacated Violette's conviction.

In May 1989, after a new trial in the District Court (Biddeford, *Janelle, J.*) at which he was represented by counsel, Violette was again convicted of the same offense. The court, this time presided over by a different judge, sentenced Violette to six months in jail, all but forty-five days suspended, and one year of probation. The court further suspended Violette's driver's license for two years, ordered him to participate in the Multiple Offenders Program and also to complete substance abuse coun-

seling to the satisfaction of his probation officer, required him to abstain from drinking or possessing intoxicating liquor as a condition of probation, and fined him $750. Violette appealed his second conviction and sentence to the Superior Court (York County, *Brodrick, J.*), which affirmed the conviction but vacated the sentence and remanded for resentencing, on the ground that the District Court erred in enhancing Violette's sentence on his second conviction. In so ruling the court relied upon *State v. Weeks* and *State v. Palmer*, in which we squarely held that an increase in punishment not related to identifiable misconduct on the part of the defendant after the original sentencing proceeding violates due process. *See, e.g., State v. Palmer*, 468 A.2d at 989.

In *State v. Weeks*, we adopted as a matter of state constitutional law the Supreme Court's federal constitutional ruling in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969). In *Weeks* we summarized the *Pearce* rule as follows:

> (1) due process of law requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial upon reconviction; (2) to assure the absence of any such motivation of vindictiveness, the reasons underlying the giving of a more severe sentence upon a defendant after a new trial and upon resentence must affirmatively appear of record; and (3) those reasons must be based on objective information concerning identifiable conduct on the part of the defendant occurring after the time of the original sentencing proceeding.

*State v. Weeks*, 267 A.2d at 646. We refused to set up an absolute bar against heavier second sentences, noting that given the problems of recidivism and crimes committed while criminal defendants were free on bail pending new trial or sentencing, it is important that the resentencing court enjoy wide latitude in fixing sentences within permissible constitutional limits. *Id.* at 647. In so ruling, we gave emphasis to the third prong of the test set up by

*Pearce*, that the reasons for an enhanced sentence must be based on recidivism by the defendant after the first sentencing proceeding. Later, in *State v. Palmer*, we reaffirmed our commitment to that rule and vacated an enhanced second sentence because the increase in punishment was not related to identifiable misconduct following the original sentencing proceeding. Again, we gave emphasis to the third prong of the *Pearce* rule, noting the difficulty of proving retaliatory motive or vindictiveness upon resentencing in any specific case. *See State v. Palmer*, 468 A.2d at 988 n. 8.

On its appeal, the State contends that *Weeks* and *Palmer* stand for the proposition that a trial court is not constitutionally prohibited from imposing a heavier second sentence, but that due process requires only that judicial vindictiveness against the defendant play no part in the resentencing process. *See State v. Palmer*, 468 A.2d at 988. In the case at bar the second sentencing judge noted on the record that he had no knowledge of the sentence imposed following the first conviction. The judge further enumerated objective facts that in his judgment required the second sentence; namely, that this OUI conviction was Violette's third and that Violette had required the apprehending police officer to engage in a high-speed chase. The State contends that the circumstances of the second sentence completely rebut the *Weeks* presumption of vindictiveness and that under federal constitutional doctrine as it has evolved since *Pearce*, the application of a prophylactic rule against an increased sentence following retrial is unwarranted in this case.

As a matter of decisional process, the fact that *Weeks* in 1970 adopted the rule of *Pearce v. North Carolina* as a rule of state constitutional law does not bar us in the appropriate circumstance from reexamining *Weeks* in light of later federal developments in the *Pearce* rule. We do not, however, find the case at bar an appropriate occasion for departing from our *Weeks* rule. Here, working with the same set of facts as were before the first sentencing

judge, the second judge simply took a different view as to what was the appropriate sentence for Violette. The rule we adopted in *Weeks* and reaffirmed in *Palmer* and *Keefe* prevents the sentencing disparities that are inherently likely to occur when two different judges engage in sentencing on the same sentencing facts, and avoids the unseemly appearance that the defendant's ultimate sentence is greater than his first for no better reason than a change in the identity of the sentencing judge. The rule, easy of application, effectively safeguards a successful appellant upon retrial from the possibility, however slight, of retaliatory vindictiveness following reconviction, and protects a convicted defendant's right to an appeal from any chilling effect emanating from the possibility that an enhanced second sentence might result from a retrial on the same facts.

In the particular circumstances of the present case, we decline to depart from the *Weeks* rule and the useful structure it provides for both litigants and courts.

The entry is:

Judgment affirmed.

ROBERTS, WATHEN, GLASSMAN and CLIFFORD, JJ., concur.

COLLINS, Justice, dissenting.

I must respectfully dissent.

As the court discusses above, in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the United States Supreme Court determined that "[d]ue process of law ... requires that vindictiveness against a defendant for having successfully attacked his first conviction must play no part in the sentence he receives after a new trial." *Id.* at 725, 89 S.Ct. at 2080. Holding that fundamental notions of fairness embodied within our concept of due process require that a convicted defendant who would seek to exercise his right to appeal or to attack collaterally his first conviction must be "freed of

apprehension of such a retaliatory motivation," *id.*, the Supreme Court established a prophylactic rule that permits a judge to impose a more severe sentence upon a defendant after a new trial only where his reasons for so doing, and the factual data underlying his reasons, affirmatively appear in the record. *Id.* at 726, 89 S.Ct. at 2081. As a further prophylaxis, the Supreme Court also stated that these reasons must be based upon "objective information concerning identifiable conduct on the part of the defendant after the time of the original sentencing procedure." *Id.*

As our court notes in the decision above, we adopted this rule as a matter of Maine constitutional law in *State v. Weeks*, 267 A.2d 641, 646–47 (Me.1970). In our decisions since *Weeks* we have adhered, as the court does today, to the requirement that a heavier sentence be imposed only where justified by a defendant's conduct *after the time of the original sentencing procedure.*[1]

As our court also points out above, the fact that we adopted this prophylactic rule in *Weeks* does not bar us from re-examining this rule in the light of subsequent federal developments in the *Pearce* rule. The court, however, declines to engage in any analysis of the federal developments that have a bearing on this issue, finding the case at bar to present an inappropriate occasion for departing from our previous cases. I respectfully submit that this case warrants our consideration of the federal developments in the *Pearce* rule because the particular circumstances of the case at bar call into question the appropriateness of our existing approach to this issue.

Even though the *Pearce* case appeared on its face to announce a rule of sweeping dimension, the Supreme Court in *Texas v. McCullough*, 475 U.S. 134, 106 S.Ct. 976, 89 L.Ed.2d 104 (1986), made it clear that the presumption of vindictiveness established in *Pearce* "do[es] not apply in every

1. *See State v. Palmer,* 468 A.2d 985, 988 (Me. 1983) (vacating a heavier second sentence because the reasons for increase in punishment were not related to identifiable conduct of defendant occurring after original sentencing pro-

ceeding). *See also State v. Keefe,* 573 A.2d 20, 21 (Me.1990) (restating the "objective information" concerning post-sentencing conduct language adopted by *Weeks*).

**1362**

case where a convicted defendant receives a higher sentence." *Id.* at 138, 106 S.Ct. at 978. *See also Alabama v. Smith,* —— U.S. ——, 109 S.Ct. 2201, 2204, 104 L.Ed.2d 865 (1989); *Chaffin v. Stynchcombe,* 412 U.S. 17, 25, 93 S.Ct. 1977, 1982, 36 L.Ed.2d 714 (1973). "Beyond doubt, vindictiveness of a sentencing judge is the evil the Court [in *Pearce* ] sought to prevent rather than simply enlarged sentences after a new trial." *McCullough,* 475 U.S. at 138, 106 S.Ct. at 978. *See also Smith,* 109 S.Ct. at 2204; *Blackledge v. Perry,* 417 U.S. 21, 27, 94 S.Ct. 2098, 2102, 40 L.Ed.2d 628 (1974); *Chaffin,* 412 U.S. at 25, 93 S.Ct. at 1982. In *Smith,* the Supreme Court stated:

> Because the *Pearce* presumption "may operate in the absence of any proof of an improper motive and thus ... block a legitimate response to criminal conduct," *United States v. Goodwin,* [457 U.S. 368, 373, 102 S.Ct. 2485, 2488, 73 L.Ed.2d 74 (1982) ], we have limited its application, like that of "other 'judicially created means of effectuating the rights secured by the [Constitution],' " to circumstances "where its 'objectives are thought most efficaciously served,' " *Texas v. McCullough, supra,* 475 U.S., at 138 [106 S.Ct. at 979], quoting *Stone v. Powell,* 428 U.S. 465, 482, 487 [96 S.Ct. 3037, 3046, 3049, 49 L.Ed.2d 1067] (1976). Such circumstances are those in which there is a "reasonable likelihood," *United States v.*

*Goodwin, supra,* 475 U.S., at 373 [102 S.Ct. at 2488], that the increase in sentence is the product of actual vindictiveness on the part of the sentencing authority. Where there is no such reasonable likelihood, the burden remains upon the defendant to prove actual vindictiveness, see *Wasman v. United States,* 468 U.S. 559, 569 [104 S.Ct. 3217, 3223, 82 L.Ed.2d 424] (1984).

*Smith,* 109 S.Ct. at 2205.

In the four leading cases on this issue, *Colten v. Kentucky,* 407 U.S. 104, 92 S.Ct. 1953, 32 L.Ed.2d 584 (1972), *Chaffin,* *McCullough,* and *Smith,* the Supreme Court has stepped away from that portion of the *Pearce* rule, upon which our court in the present case relies, that permits a sentencing judge to impose a heavier sentence only where "objective information concerning identifiable conduct on the part of the defendant after the time of the original sentencing procedure" is present. In each of these four cases, the Court found that either the presumption of vindictiveness did not arise or that the presumption was rebutted despite the fact that evidence of each defendant's conduct after he was initially sentenced did not exclusively justify the heavier second sentence each defendant received.[2] In fact, in *McCullough,* the Supreme Court stated:

**2.** First, in *Colten,* the Supreme Court refused to apply the *Pearce* presumption, despite the absence of evidence of the defendant's conduct *after* his initial sentencing, in a case where a defendant in Kentucky's two-tier trial court system sought and received a trial de novo after his initial conviction and upon reconviction received a more severe sentence than that previously imposed. The Supreme Court held that no presumption arose because the trial de novo was in a different court that was not asked "to do over what it thought it had already done correctly." *Colten,* 407 U.S. at 117, 92 S.Ct. at 1960. Second, in *Chaffin,* the Supreme Court held that no presumption of vindictiveness arose where a second jury, on retrial following a successful appeal, imposed a more severe sentence than that imposed by a prior jury despite the fact that no evidence of the defendant's conduct *after* he was initially sentenced justified the heavier sentence. The Court assumed that a second jury typically will not be aware of the prior sentence, will be unlikely to have a "personal stake" in the prior conviction, and will not

be "sensitive to the institutional interest" that a judge may have in discouraging what he sees as meritless appeals. *Chaffin,* 412 U.S. at 26–28, 93 S.Ct. at 1982–83. Third, in *McCullough,* the Supreme Court held that there was no basis for the *Pearce* presumption of vindictiveness where, at a new murder trial ordered by the same judge who presided over both the first and second murder trials, the judge levied a heavier sentence than that imposed by a jury at the previous trial. *McCullough,* 475 U.S. at 136–37, 106 S.Ct. at 977–78. The judge stated that her reason for imposing a heavier sentence was that evidence of the murder that was not revealed at the first trial was presented at the second trial. *Id.* This evidence, of course, related to the defendant's conduct *before* he was initially sentenced. Nevertheless, the Supreme Court found the judge's own order of a new trial to be inconsistent with a presumption of vindictiveness. *Id.* at 138–39, 106 S.Ct. at 978–79. The Court also stated that the fact that a different sentencer imposed the second sentence did not create a presumption of vindictiveness, particu-

*Pearce* permits "a sentencing authority [to] justify an increased sentence by affirmatively identifying relevant conduct or events that occurred subsequent to the original sentencing proceedings." [Citation omitted]. *This language, however, was never intended to describe exhaustively all of the possible circumstances in which a sentence increase could be justified.* ... Perhaps then the reach of *Pearce* is best captured in our statement in *United States v. Goodwin,* 457 U.S., at 374, 102 S.Ct. at 2489:

> "In sum, the Court [in *Pearce*] applied a presumption of vindictiveness, which may be overcome only by objective information ... justifying the increased sentence."

*McCullough,* 475 U.S. at 142, 106 S.Ct. at 981 (emphasis added).

Turning to the particular facts of the present case, I submit that there is no indication of a "reasonable likelihood" of retaliatory vindictiveness on the part of the second sentencing judge. The second sentencing judge in the present case was not the judge before whom the defendant's case was initially tried. Not only was the second judge viewing the evidence presented at the second trial for the first time, but he also stated on the record at the conclusion of the trial that he was entirely unaware of the length or severity of the first sentence imposed on the defendant. Given his ignorance of the scope of the first sentence, it would have been impossible for the second judge here *intentionally* to have imposed a more severe sentence upon the defendant than that previously imposed. In *Chaffin,* the Supreme Court faced a similar situation where a jury, which meted out a heavier sentence on the defendant after his reconviction than that

initially imposed by a different jury, had not been informed of the scope of the prior sentence. Finding no reason to suspect that a vindictive motive prompted the heavier sentence, the Supreme Court stated, "[t]he first prerequisite for the imposition of a retaliatory penalty *is knowledge of the prior sentence." Chaffin,* 412 U.S. at 26, 93 S.Ct. at 1982 (emphasis added). *See also McCullough,* 475 U.S. at 140, 106 S.Ct. at 979; *Colten,* 407 U.S. at 117, 92 S.Ct. at 1960. Additionally, it is unlikely that the second sentencing judge here was motivated by retaliatory vindictiveness because, as in the *Colten* case, the judge here was not presented with a situation in which he was asked "to do over what [he] thought [he] had already done correctly." *Colten,* 407 U.S. at 117, 92 S.Ct. at 1960.

Further, it seems plainly evident that the second sentencing judge in the present case chose to impose a sentence that proved to be more severe than that previously imposed upon consideration of the objective, nonvindictive factors that he enumerated on the record. *See McCullough,* 475 U.S. at 140, 106 S.Ct. at 979. These factors, as our court noted above, included the fact that this was the defendant's third OUI conviction and the fact that the defendant fled in a high-speed automobile chase from the arresting officer. No one argues that these are inappropriate factors for a court to consider when imposing a sentence for operating under the influence. Nor does anyone contend that in the absence of the existence of the previous, less-severe sentence in this case, the second sentence here would be inappropriate. I suggest that even if the presumption of vindictiveness were to arise in the circumstances of the present case, the fact that the second sen-

larly where wholly logical, non-vindictive reasons for the heavier sentence were stated on the record. *Id.* at 140, 106 S.Ct. at 980. Finally, in *Smith,* the Supreme Court held that the *Pearce* presumption of vindictiveness does not apply where a sentence imposed after trial is greater than that previously imposed after a guilty plea, even where the same judge metes out both sentences. *Smith,* 109 S.Ct. at 2205–07. In that case, the "fuller appreciation of the nature and extent of the crimes charged" and the "insights into [the defendant's] moral character and suita-

bility for rehabilitation" that the judge gained during the trial served as the basis for the greater sentence imposed. *Id.* at 2206. While this appreciation and these insights are clearly justifiable factors to consider in sentencing, the fact that the court's appreciation and insights pertained in large part to the defendant's conduct *before* his initial sentencing did not preclude the Supreme Court from holding that "it cannot be said to be more likely than not that a judge [here was] motivated by vindictiveness." *Id.*

tencing judge was unaware of the scope of the previous sentence, combined with the objective reasons that he stated for the scope of the sentence he imposed, must be sufficient to rebut that presumption.

Given the clear absence of any indication of a vindictive motive on the part of the second sentencing judge, I fear that the court today re-embraces the prophylactic rule established in *Weeks* for its "eas[e] of application" rather than for its significance as a safeguard against judicial retaliatory vindictiveness. I respectfully suggest that the interests of justice would be better served if we adopted as a matter of Maine constitutional law the less formalistic approach to this problem, presently embraced by the United States Supreme Court with respect to federal constitutional law, that focuses upon whether a "reasonable likelihood" of retaliatory vindictiveness exists, and permits objective evidence to rebut the *Pearce* presumption of improper motive even where that evidence does not relate exclusively to a defendant's conduct *after* imposition of his initial sentence.

